IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROGER E. HERST REVOCABLE
TRUST, *et al.*,

    *Plaintiffs*,

    v.

BLINDS TO GO (U.S.) INC., *et al.*,

    *Defendants*.

Civil Action No. ELH-10-3226

**MEMORANDUM OPINION REGARDING ATTORNEYS' FEES**

    This case involves a commercial landlord-tenant dispute between Roger E. Herst Revocable Trust; Dr. Roger E. Herst, Trustee of the Roger E. Herst Revocable Trust; and Joshua R. Herst, plaintiffs, and Blinds to Go (U.S.) Inc. and Blinds to Go Inc., defendants. The case was tried to the Court, without a jury, on October 3 and 4, 2011. The facts are set forth in the Court's Amended Memorandum of Decision. *See* ECF 60. In brief, the Court found that defendants breached the lease and guaranty at issue and are jointly and severally liable to plaintiffs for the principal amount of $220,458.82 (including $202,560.86 in unpaid rent and late fees, and $17,897.96 in other damages), plus pre-judgment interest.

    The lease at issue (the "Lease") contains a provision that states: "[I]f an action for breach of or to enforce the provisions of this Lease is commenced, the court in such action shall award to the party in whose favor judgment is entered, a reasonable sum as attorneys' fees and costs." Lease § 24.1. In a pretrial ruling (ECF 40), with the consent of the parties, the Court reserved the issue of attorneys' fees until after the trial on the merits. Accordingly, the Court has withheld entry of a final judgment pending resolution of the issue of attorneys' fees. *See Carolina Power & Light Co. v. Dynergy Marketing & Trade*, 415 F.3d 354, 360 (4th Cir. 2005) (holding that, where a "claim for legal costs is a substantive claim in that it is based on a contract that provides

for the recovery of fees as an element of damages to be proved at trial," final judgment cannot be entered until the fee claim is resolved); *see also G-C P'ship v. Schaefer*, 358 Md. 485, 488, 749 A.2d 823, 825 (2000) ("counsel fees that were awardable pursuant to the contract form part of the claim for breach of contract"); *SunTrust Bank v. Goldman*, 201 Md. App. 390, ___, 29 A.3d 724, 731 (2011) ("'attorney's fees recoverable pursuant to a contract are part of the damages claim'") (quoting *AccuBid Excavation, Inc. v. Kennedy Contractors, Inc.*, 188 Md. App. 214, 231, 981 A.2d 727, 737 (2009)); *Monarc Const., Inc. v. Aris Corp.*, 188 Md. App. 377, 399, 981 A.2d 822, 831 (2009) (same).

Following the trial on the merits, plaintiffs filed their Motion for Attorneys' Fees (ECF 51). The matter has been fully briefed,[1] and no hearing is necessary. *See* Local Rule 105.6; *SunTrust*, 201 Md. App. at ___, 29 A.3d at 730 (stating that a court "need not necessarily hold an evidentiary hearing to determine an appropriate award" of attorneys' fees). For the reasons that follow, I will award plaintiffs $91,922.76 in attorneys' fees and $406.63 in expenses as additional damages, and will direct entry of judgment in favor of plaintiffs.

### Discussion

In a diversity action such as this, a party's right to recover attorneys' fees is ordinarily governed by state law. *See Ranger Const. Co. v. Prince William County Sch. Bd.*, 605 F.2d 1298, 1301 (4th Cir. 1979); *Rohn Prods. Int'l, LC v. Sofitel Capital Corp.*, Civ. No. WDQ-06-504, 2010 WL 3943747, at *4 n.13 (D. Md. Oct. 7, 2010) ("'In a diversity case, absent a conflicting applicable federal rule of procedure, state law governs not only the actual award of attorneys' fees but also the method of determining those fees.'") (citation omitted); *Glassman*

---

[1] I have considered plaintiffs' Motion for Attorneys' Fees (ECF 51) and accompanying memorandum (ECF 51-1) (collectively, the "Motion"), defendants' memorandum in response thereto ("Opposition" or "Opp.") (ECF 52), and plaintiffs' reply ("Reply") (ECF 58).

*Const. Co. v. Md. City Plaza, Inc.*, 371 F. Supp. 1154, 1162 (D. Md. 1974).[2]

"Contract provisions providing for awards of attorney's fees to the prevailing party in litigation under the contract generally are valid and enforceable in Maryland." *Myers v. Kayhoe*, 391 Md. 188, 207, 892 A.2d 520, 532 (2006). However, "Maryland law limits the amount of contractual attorneys['] fees to actual fees incurred, regardless of whether the contract provides for a greater amount." *SunTrust*, 201 Md. App. at ___, 29 A.3d at 728. Moreover, "[e]ven in the absence of a contract term limiting recovery to reasonable fees, trial courts are required to read such a term into the contract and examine the prevailing party's fee request for reasonableness." *Myers*, 391 Md. at 207, 892 A.2d at 532; *see also Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 316, 844 A.2d 460, 478 (2004); *SunTrust*, 201 Md. App. at ___, 29 A.3d at 730 ("Current law allows a court to grant only those attorneys' fees it finds reasonable."). Thus, "courts must routinely undertake an inquiry into the reasonableness of any proposed fee before settling on an award." *Monmouth Meadows Homeowners Ass'n, Inc. v. Hamilton*, 416 Md. 325, 333, 7 A.3d 1, 5 (2010). The "reasonableness of attorney's fees is a factual determination within the sound discretion of the court." *Myers*, 391 Md. at 207, 892 A.2d at 532.

"'The burden is on the party seeking recovery to provide the evidence necessary for the fact finder to evaluate the reasonableness of the fees.'" *Ulico*, 380 Md. at 316, 844 A.2d at 478 (citation omitted). Therefore, the party seeking a fee award must provide "'detailed records'"

---

[2] It is not necessarily clear whether the state law that governs an award of attorneys' fees is the law of the forum state or, instead, the law of another state that is applicable to the substantive issues being litigated, under the forum state's choice-of-law rules. *See generally Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 796-97 (8th Cir. 2005) ("[O]ur conclusion that the matter of attorney's fees is 'substantive' for purposes of [the *Erie* Doctrine]—such that state rather than federal law governs—does not necessarily establish that the issue of attorney's fees is 'substantive' rather than 'procedural' for purposes of conflict of laws. The two inquiries are distinct.") (citing *Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988)). In this case, Maryland is both the forum state and the source of the applicable substantive law, so a choice-of-law issue does not arise.

that specify "'the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged.'" *Rauch v. McCall*, 134 Md. App. 624, 639, 761 A.2d 76, 84 (2000) (citation omitted), *cert. denied*, 362 Md. 625, 766 A.2d 148 (2001). "'[W]ithout such records, the reasonableness, vel non, of the fees can be determined only by conjecture or opinion of the attorney seeking the fees and would therefore not be supported by competent evidence.'" *Id.* at 639, 761 A.2d at 85 (citation omitted).

Maryland courts ordinarily utilize the "lodestar" approach when determining attorneys' fees under fee-shifting statutes. *Friolo v. Frankel*, 373 Md. 501, 504-05, 819 A.2d 354, 356 (2003) ("*Friolo I*").[3] However, the Maryland Court of Appeals has held that the lodestar approach is "an inappropriate mechanism for calculating fee awards" under contractual fee-shifting provisions in "disputes between private parties over breaches of contract." *Monmouth Meadows*, 416 Md. at 336, 7 A.3d at 7. This is because a "contractual fee-shifting provision is designed by the parties, not by the legislature. . . . Thus, it usually serves no larger public purpose than the interests of the parties." *Congressional Hotel Corp. v. Mervis Diamond Corp.*, 200 Md. App. 489, 505, 28 A.3d 75, 84 (2011). Rather than using the lodestar approach, a court "should use the factors set forth in Rule 1.5 [of the Maryland Rules of Professional Conduct ("MRPC")[4]] as the foundation for analysis of what constitutes a reasonable fee when the court

---

[3] The *Friolo* litigation has spawned four reported opinions of the Maryland appellate courts, all dealing with issues concerning awards of attorneys' fees. *See Frankel v. Friolo*, 170 Md. App. 441, 907 A.2d 363 (2006) ("*Friolo II*") (holding that, when applying the lodestar approach, a court must provide a "clear explanation of the factors employed"), *aff'd*, 403 Md. 443, 942 A.2d 1242 (2008) ("*Friolo III*") (holding that an award of attorneys' fees under a fee-shifting statute should include "appellate fees . . . incurred in successfully challenging . . . the attorneys' fee awarded"); *Friolo v. Frankel*, 201 Md. App. 79, 28 A.3d 752 (2011) ("*Friolo IV*"), *cert. granted*, ___ Md. ___, No. 102, Sept. Term 2011 (Dec. 16, 2011).

[4] MRPC 1.5(a) is a standard of professional ethics, generally applicable to all attorney-client relationships, which mandates that an attorney "shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses."

awards fees based on a contract entered by the parties authorizing an award of fees." *Monmouth Meadows*, 416 Md. at 336-37, 7 A.3d at 8.[5]

MRPC 1.5(a) enumerates eight non-exclusive "factors to be considered in determining the reasonableness of a fee":

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

"In order to apply Rule 1.5 to a fee award, a court does not need to evaluate each factor separately" *SunTrust*, 201 Md. App. ___, 29 A.3d at 730; *see Monmouth Meadows*, 416 Md. at 337 n.11, 7 A.3d at 8 n.11.[6] Moreover, when conducting an MRPC 1.5 analysis, a court "should consider the amount of the fee award in relation to the principal amount in litigation, and this may result in a downward adjustment. Although fee awards may approach or even exceed the

---

[5] Cases decided under the lodestar approach can "provide helpful guidance" in contractual fee-shifting cases, *Congressional Hotel*, 200 Md. App. at 505, 28 A.3d at 85, because "there is likely to be some overlap between the Rule 1.5 factors and the mitigating factors typically considered in a lodestar analysis." *Monmouth Meadows*, 416 Md. at 337, 7 A.3d at 8. A list of factors similar to the list in MRPC 1.5 was enunciated, for use in a lodestar analysis, in the seminal case of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and the so-called "*Johnson* factors" have been adopted for use in lodestar cases by the Fourth Circuit, *see Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978), and in Maryland. *See Friolo I*, 373 Md. at 522 n.2, 819 A.2d at 366 n.2.

[6] Indeed, a court need not "make explicit findings with respect to Rule 1.5" at all, or even "mention Rule 1.5 as long as it utilizes the rule as its guiding principle in determining reasonableness." *Monmouth Meadows*, 416 Md. at 340 n.13, 7 A.3d at 10 n.13.

amount at issue, the relative size of the award is something to be evaluated." *Monmouth Meadows*, 416 Md. at 337, 7 A.3d at 8.  And, a "trial court also may consider, in its discretion, any other factor reasonably related to a fair award of attorneys' fees." *Id.* at 337-38, 7 A.3d at 8.

### A.  Plaintiffs' Attorneys' Billing

With their Motion, plaintiffs submitted nine bills and a supporting affidavit showing that plaintiffs' counsel charged a total of $91,836.50 in attorneys' fees from October 14, 2010, to November 3, 2011.[7]  With their Reply, plaintiffs submitted an additional bill, dated November 30, 2011, and a supporting affidavit, showing an additional $9,160 in attorneys' fees incurred in connection with the Motion.

The bills reflect that three attorneys and one paralegal with the firm Miles & Stockbridge, P.C., performed work on the case for plaintiffs.  Most of the billed hours are attributed to G. Randall Whittenberger, Esquire, a principal of Miles & Stockbridge with more than 25 years in practice, whose regular hourly rate is $350.  Mr. Whittenberger represented plaintiffs at the trial. He billed a total of 266.3 hours of work, exclusive of the Motion, and an additional 25.6 hours in connection with the Motion.  Most of the other hours are attributed to Thomas E. Lynch, III, Esquire, another principal of the firm with over 25 years' experience, whose regular hourly rate

---

[7] The billing submitted by plaintiffs also reflects expenses totaling $406.63 for filing fees, messenger services, postage, "photographic copies," and parking.  Some, but not all, of these expenses are costs that are ordinarily taxable to the prevailing party, in the absence of an applicable fee-shifting provision.  *See* 28 U.S.C. § 1920.  Defendants have not challenged plaintiffs' right to reimbursement for these expenses.  The expenses appear reasonable to the Court and (to the extent that they would not ordinarily be taxable as costs) recoverable by plaintiffs under the fee-shifting provision in the Lease.  Accordingly, expenses of $406.63 will also be awarded to plaintiffs.  To the extent that plaintiffs have incurred other expenses that are ordinarily taxable costs, they may seek reimbursement for them after entry of judgment by submitting a bill of costs pursuant to 28 U.S.C. § 1920, Rule 54(d)(1) of the Federal Rules of Civil Procedure, and the Clerk's Office's *Guidelines for Bills of Costs* (2d ed. Aug. 2011), *available at* http://www.mdd.uscourts.gov/publications/forms/BillofCostsGuidelines.pdf.

is $425.[8]  Mr. Lynch billed a total of 15.5 hours in connection with the litigation.  "Professional

discounts" were applied to many of the charges of Mr. Whittenberger and Mr. Lynch.  On some

bills, the discount is described as a 10% discount; on other bills, the amount of the discount

appears to be arbitrary; on three bills, no discount was applied.  The different discounts result in

varying *de facto* hourly rates for Mr. Lynch[9] and Mr. Whittenberger.

On January 3, 2011, Gregory M. Burgee, Esquire, another attorney at the firm,

participated with Mr. Whittenberger and Mr. Lynch in a conference concerning the case.  Mr.

Burgee billed four tenths of an hour for his time, at an undiscounted hourly rate of $420.  A

paralegal, Frederick Procter, billed six tenths of an hour for "title work."  Motion at 2.  Although

Mr. Procter's ordinary rate is $155 per hour, only $80 was charged for his work (*i.e.*, Mr.

Procter's time was effectively charged at a discounted rate of $133.33 per hour).

Defendants advance three grounds to support their request to reduce the amount of legal

fees awarded to plaintiffs.  First, with respect to the MRPC 1.5 factor concerning "the time and

labor required," plaintiffs contend that the Court should not permit fee recovery for time that

plaintiffs' counsel expended on the motion for summary judgment that plaintiffs filed but later

withdrew before it could be decided by the Court.  *See* ECF 20.  Second, as to some of the time

billed, defendants argue that the hourly rates charged by plaintiffs' attorneys and a paralegal

exceed the maximum applicable rates set forth in this Court's "Rules and Guidelines for

Determining Attorneys' Fees in Certain Cases" ("Guidelines"), which are found in Appendix B

to the Local Rules.  These rates are relevant to MRPC 1.5(a)(3), "the fee customarily charged in

---

[8] Mr. Lynch was unable to participate in the pretrial and trial proceedings for health reasons.  Motion at 2.

[9] Of the 15.5 hours billed by Mr. Lynch, a half hour was expended on the Motion.  On the bill for work in connection with the Motion, submitted with plaintiff's Reply, no discount was explicitly applied.  However, on that bill, Mr. Lynch's work was charged at $400/hour, not $425/hour.  *See* ECF 57-1.

the locality for similar legal services."   Third, defendants insist that, in consideration of the

fourth MRPC 1.5 factor ("the amount involved and the results obtained"), the entire fee award to

plaintiffs should be reduced by a percentage based on plaintiffs' purported degree of success in

the case.   For this final contention, defendants rely in large part on a methodology endorsed by

the Maryland Court of Special Appeals in its recent decision in *Friolo IV.   See Friolo v. Frankel*,

201 Md. App. 79, 28 A.3d 752 (2011), *cert. granted.*, ___ Md. ___, No. 102, Sept. Term 2011

(Dec. 16, 2011).[10]

### B. The Fee Customarily Charged in the Locality for Similar Legal Services

Defendants observe that plaintiffs' attorneys' billings exceed, in some instances, the

maximum hourly rates set forth in the Guidelines.   Therefore, they urge the Court to limit

plaintiffs' fee recovery to the maximum Guidelines rates.   In particular, defendants point out that

the hourly rates of Mr. Burgee, Mr. Proctor, and, on occasion, Mr. Lynch, exceed the applicable

maximum Guidelines rates.

Under MRPC 1.5(a)(3), a court reviewing an attorneys' fee request must consider "the

fee customarily charged in the locality for similar legal services."   In this connection, the Fourth

Circuit follows the "locality rule," whereby "'[t]he community in which the court sits is the first

place to look to in evaluating the prevailing market rate.'"   *Montcalm Pub. Corp. v.*

---

[10]   Defendants do not argue that the "novelty and difficulty" and "skill required to perform" aspects of the first factor under MRPC 1.5, or the second, fifth, sixth, seventh, or eighth factors under MRPC 1.5, provide any basis for departure from the billed amounts.   I agree. Therefore, although I have considered those factors, I will not discuss them further in this opinion, except to note that, as the *Friolo IV* Court observed, many of these factors are ordinarily subsumed within an analysis of the hourly rate and number of hours charged.   *See Friolo IV*, 201 Md. App. at ___, 28 A.3d at 770-71 ("The very concept of hourly compensation inherently accounts for preclusion of other employment because it represents the attorney's 'opportunity cost' of time and labor.   A reasonable rate fundamentally reflects the attorney's requisite skill, experience, and ability, which the court uses to ascertain comparable and customary fees in the relevant location for similar services.   Naturally, this evaluation will include the awardee's existing fee agreement and the attorney's agreements with other clients, taking into account the length and nature of those professional relationships.") (internal citations and footnotes omitted).

*Commonwealth of Va.*, 199 F.3d 168, 173 (4th Cir. 1999) (citation omitted).  "Evidence of the prevailing market rate usually takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate.  However, in the absence of sufficient documentation, the court may rely on its own knowledge of the market."  *CoStar Group, Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 788 (D. Md. 2000).

"In the District of Maryland, this market knowledge is embedded in the Guidelines." *Gonzales v. Caron*, Civ. No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011). "The Guidelines set forth advisory fee ranges for attorneys based on years of experience.  The rates "are intended solely to provide practical guidance to lawyers and judges when requesting, challenging and awarding fees," and "may serve to make the fee petition less onerous by narrowing the debate over the range of a reasonable hourly rate in many cases."  Guidelines § 3 n.6.  However, the fee ranges are not binding on the Court.  *Id.*; *see also Thomas v. Smith, Dean & Assocs., Inc.*, Civ. No. ELH-10-3441, 2011 WL 3567043, at *2 (D. Md. Aug. 10, 2011) (stating that the Guidelines rates "are neither binding nor definitive ").

Although "the Guidelines are not binding, generally this Court presumes that a rate is reasonable if it falls within these ranges."  *Gonzales*, 2011 WL 3886979, at *2.  The maximum Guidelines rate for an attorney admitted to the bar for fifteen years or more is $400 per hour. The maximum Guidelines rate for a paralegal or law clerk is $115 per hour.

Mr. Burgee's hourly rate exceeds the maximum applicable Guidelines rate by $20 per hour.  Mr. Procter's rate exceeds the maximum Guidelines rate for paralegals by $18.33 per hour.  And, on some bills, Mr. Lynch charged rates that exceed the applicable maximum Guidelines rate, by amounts ranging from $9 to $25 per hour.  However, these charges deviate from the Guidelines rates by very small amounts and, more importantly, the number of hours

billed at these rates is minuscule: a total of only 4.4 hours among the three timekeepers was billed at rates above the Guidelines.   The result is that the total amount of the purported "overages" charged in excess of the Guidelines is only $61.30, which is a trifling sum in the context of this case.   Although the rates charged are in some instances slightly above the Guidelines rates, in my view the rates are not unreasonable, under the circumstances.   Moreover, as indicated, the Guidelines are advisory.   Therefore, I reject this argument for reduction.

C.  Time and Labor Required

I next consider the "time and labor required."   MRPC 1.5(a)(1).   Defendants argue that the Court should disallow time spent in preparation of plaintiffs' motion for summary judgment, which plaintiffs later withdrew.   Defendants estimate that the total amount charged by plaintiffs in connection with that motion is $7,795.44.   I agree with defendants (although I will disallow a slightly lower dollar amount).   Moreover, in further consideration of the reasonable "time and labor required," I will also disallow some time charged by multiple attorneys for conferences, and time incurred in preparing plaintiffs' "Response to Court's November 21, 2011 Revised Order" ("Response") (ECF 58).

Plaintiffs filed a motion for summary judgment on March 17, 2011 (ECF 20).   The motion consisted of two pages and included a six-page memorandum in support, asserting that there was no material dispute of fact and seeking entry of judgment in plaintiffs' favor in the amount of $314,210.41, plus attorneys' fees.   It was based primarily on an affidavit and accompanying spreadsheet prepared by Roger Herst, itemizing plaintiffs' damages.   On April 18, 2011, defendants filed an opposition to the summary judgment motion (ECF 27).   After the Court granted two extensions of time for plaintiffs to file a reply, *see* ECF 29, 31, they withdrew their summary judgment motion, without a ruling from the Court.   *See* ECF 32, 33.

Defendants argue: "The filing of the motion, particularly when supported by an admittedly erroneous damages calculation, was an unnecessary expenditure of legal resources for which Blinds to Go should not be charged."  Opp. at 6.  "Not only was this work not required," they maintain, "but the filing of the summary judgment motion further complicated the damages issue and caused an even greater expenditure of legal fees by both plaintiffs and Blinds to Go." *Id.* at 6-7.  Moreover, defendants correctly point out that Dr. Herst conceded at trial that several of the matters set forth on the spreadsheet were mistaken or miscalculated.  Plaintiffs respond that the preparation of the summary judgment motion "served the duplicate function of preparing for trial, and more particularly lining up evidence for trial."  Reply at 3.  They add that the "time spent assembling such information would have been spent in trial preparation anyway."  *Id.*

I agree with defendants that they should not be charged for the time spent in preparation of the summary judgment motion.  To be sure, as plaintiffs argue, a motion for summary judgment can be used to elucidate the evidence upon which the opponent relies.  However, the tactical value of summary judgment motions practice does not support the assignment of the cost to the defendants.  Nor does it excuse the filing of a motion that contained factual errors, and which was later withdrawn.  It is also salient that I ruled, at trial, that certain items of damages plaintiffs sought in the summary judgment motion and at trial were not recoverable.[11]

As defendants observe, much of the time spent on the summary judgment motion was billed collectively by plaintiffs' counsel with time spent on other aspects of the case, in a "block billing" format.  As a result, the precise time allocable to the summary judgment motion cannot be determined.  Opp. at 7.  Defendants have estimated the proportion of each line item attributable in whole or in part to the summary judgment motion.  *See* Opp. at 8-11.  Plaintiffs

---

[11] For instance, I disallowed recovery for a substantial portion of the "administrative costs" sought by plaintiffs, and I prorated the reimbursement for the broker's commission attributable to the new lease, in accordance with governing Maryland law.

have not challenged defendants' estimates and, with one exception, I view the estimates as reasonable.

The exception is a line item of billing by Mr. Whittenberger, dated October 13, 2010, for "Revisions to motion for summary judgment and supporting documents; review WilmerHale contentions on amount of damages; conference with Tom Lynch re: theories of damages; review of remedy provision of lease." Mr. Whittenberger charged two hours for this item, at an effective hourly rate, after discounting, of $326.09. Defendants argue that 100% of this line item should be disallowed. In my view, the conference between counsel and the review of remedial and damages issues are not wholly attributable to the motion for summary judgment.[12] Therefore, I will only disallow one hour (rather than the full two hours) from this line item.

Therefore, the bills submitted by plaintiffs in connection with the summary judgment motion will be rejected, save and excepting $326.09. Put another way, of the $7,795.44 sought for the summary judgment motion, I will allow $326.09, and disallow $7,469.35.

A further reduction based on the "time and labor required," MRPC 1.5(a)(1), is in order, in light of plaintiffs' billing for conferences among counsel. This Court's Guidelines "apply to cases in which a prevailing party would be entitled, by applicable law or contract, to reasonable attorneys' fees based on a set of criteria including hours and rates," Guidelines § 1 n.1, and accordingly are applicable here. Section 2(d) of the Guidelines provides:

> Generally, only one lawyer is to be compensated for client, third party and intraoffice conferences, although if only one lawyer is being compensated the time may be charged at the rate of the more senior lawyer. Compensation may be paid for the attendance of more than one lawyer where justified for specific purposes such as periodic conferences of defined duration held for the purpose of work organization, strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation.

---

[12] I will address, next, the billing for conferences.

In this case, on several occasions on which plaintiffs' counsel held attorney conferences, more than one attorney charged for the time.  Plaintiffs have submitted no evidence of specific purposes that justified the multiple billing.  Although I recognize that lawyers frequently consult on matters for which they are jointly involved, some of the consultations itemized in plaintiffs' billing have resulted in duplicate charges that should not be assessed against defendants.  In accordance with § 2(d) of the Guidelines, I will allow billing for the conferences only by the participating attorney with the highest hourly rate.[13]

In particular, on September 21, 2010, Mr. Whittenberger and Mr. Lynch conferred for four tenths of an hour, and both attorneys billed for their time.  (Mr. Lynch billed for this conference on the October 14, 2010 invoice, while Mr. Whittenberger billed for it on the November 9, 2010 invoice).  I will disallow four tenths of an hour of Mr. Whittenberger's time (as his effective hourly rate of $326.09 is the lower rate of the two), which amounts to a reduction of $130.44.   On October 13, 2010, Messrs. Lynch and Whittenberger again conferenced, this time for two tenths of an hour.  Again, I will disallow Mr. Whittenberger's time; at an hourly rate of $326.09, this results in a disallowance of $65.22.  Another conference lasting two tenths of an hour between the two attorneys occurred on November 16, 2010.  Once again, Mr. Whittenberger's time (billed on this invoice at an effective rate of $312.50) will be reduced by $62.50.   Both counsel billed half an hour of time on November 24, 2010, for activities including a conference.  Disallowing Mr. Whittenberger's time, I will reduce the fee by $62.50.

As noted, Mr. Burgee, Mr. Whittenberger, and Mr. Lynch conferred for four tenths of an hour on January 3, 2011.  Mr. Burgee's hourly rate is the highest of the three.  Accordingly, four

---

[13] There are several occasions in the billing in which a multiple attorney conference occurred but, appropriately, only one attorney billed for it.

tenths of an hour of Mr. Lynch's time (at the effective rate of $409/hour) and Mr.

Whittenberger's time (at the effective rate of $332.07/hour) will be disallowed, amounting to a

reduction of $296.43.  In addition, I will deduct two tenths of an hour, totaling $66.41, from Mr.

Whittenberger's time with respect to a conference with Mr. Lynch on January 12, 2011.  I will

also reduce by a half hour Mr. Whittenberger's billing on the invoice of March 28, 2011 (on

which he charged an effective hourly rate of $315), amounting to $157.50, based on a series of

email communications with Mr. Lynch.  Finally, Mr. Whittenberger's time on the invoice of July

18, 2011 (billed at the effective hourly rate of $316.97) will be reduced by another two tenths of

an hour, totaling $63.39, based on a conference with Mr. Lynch on April 14, 2011.

     In sum, the total reduction that will be applied for multi-attorney conferences is $904.39.

     In defendants' Opposition to the Motion, they pointed out an error in the Court's factual

findings with respect to liability and damages, which is discussed in the Court's Order Regarding

Memorandum of Decision (ECF 59) and Amended Memorandum of Decision (ECF 60).  In

brief, I erroneously found that the replacement tenant, Vitamin Shoppe, was not obligated to pay

the real estate taxes for the property at issue.  As a result, I miscalculated the amount of the credit

applicable to defendants' account for future "surplus" rents that plaintiffs are entitled to receive

from Vitamin Shoppe.  Therefore, I issued an Order (ECF 53), in which I observed that

defendants appeared to be correct in their assertion of error, and set forth a revised calculation of

damages to correct the error.  I also invited both sides to "address any concerns regarding the

[revised damages] analysis, or any opposition to revision of the Memorandum of Decision and

Order in accordance with this analysis."  ECF 53 at 2.

     In their Response to that Order, plaintiffs did not dispute defendants' assertion of error

regarding the real estate tax obligation, nor did they challenge the Court's calculation of the

present value of the surplus credit amount.  Rather, plaintiffs took the Court's invitation to respond as an opportunity for a proverbial "second bite at the apple," and challenged the Court's underlying determination that defendants are entitled to a credit against their liability for the "surplus" rent that will flow from the Landlord's lease with Vitamin Shoppe, the replacement tenant; they did not challenge the amount of the credit.  This matter was fully briefed and argued by the parties before and during trial, and I explained my reasoning fully in my original Memorandum of Decision.  Although it was not improper for plaintiffs' counsel to reiterate their clients' position, it is not reasonable to require defendants to pay the cost of such advocacy. Accordingly, I conclude that defendants should not bear the cost of plaintiffs' Response.

The drafting of the Response was billed by Mr. Whittenberger, at a $350 hourly rate for 3.5 hours of work, on a line item titled "Revisions to Reply to Opposition to Motion for Attorneys' Fees; review Court's Revised Opinion; drafting Response to revised opinion."  ECF 57-1.  Because the billing included work other than the Response, I will disallow recovery for two hours, totaling $700.

### D.  The Amount Involved and the Results Obtained

Before considering defendants' final argument, in which they urge the Court to reduce plaintiffs' overall fee award by a percentage based on the reasoning of *Friolo IV*, *supra*, 201 Md. App. 79, 28 A.3d 752, I pause to calculate the total fee amount, after the preceding reductions. Inclusive of billing submitted with plaintiffs' Motion and their Reply, plaintiffs seek a total of $100,996.50 in attorneys' fees.  That amount will be reduced by $7,469.35 for time incurred on the motion for summary judgment; $904.39 for time incurred in multi-attorney conferences; and $700 for time incurred with respect to plaintiffs' Response.  Thus, before considering the factor of "the amount involved and the results obtained," MRPC 1.5(a)(4), the allowable fees stand at

$91,922.76.

Defendants' argument for a percentage reduction of that figure is based on the Maryland Court of Special Appeals's recent decision in *Friolo IV*. The issue of attorneys' fees in the *Friolo* litigation arose under a Maryland fee-shifting statute (specifically, the Maryland Wage and Payment Law ("MWPL")), not under a contractual fee-shifting provision. As noted, the *Friolo* litigation in the Maryland appellate courts has primarily concerned the issue of attorneys' fees. By the time of the decision in *Friolo IV*, the underlying merits of the MWPL claims were no longer in dispute. *See Friolo IV*, 201 Md. App. at ___, 28 A.3d at 765-68. Moreover, in the litigation regarding the attorneys' fees, the parties had stipulated to the reasonableness of the hourly rates charged by plaintiff's counsel, *id.* at ___, 28 A.3d at 771, and the *Friolo IV* Court observed that many of the factors used in assessing reasonableness "are subsumed by the court's basic lodestar calculation" of hours expended multiplied by hourly rate. *Id.* Therefore, the case "resolve[d] to a single question: what was Friolo's 'degree of success' in light of the fee-shifting statutes' provisions for 'reasonable' attorney's fees and costs." *Id.* at ___, 28 A.3d at 772.

The *Friolo IV* Court proposed an essentially mathematical approach to answering that question. In the underlying litigation, the jury found in Friolo's favor on her MWPL claim, but awarded her some $60,000 less than she had demanded in damages. *Id.* at ___, 28 A.3d at 776. Discussing the effect of Friolo's partial success, the *Friolo IV* Court said: "If a fact-finder awards only *part* of a *single* claim, then the verdict effectively severs a plaintiff's claims into two portions, one with merit and one without." *Id.* at ___, 28 A.3d at 777 (emphasis in original). Therefore, the appellate court reasoned that the "legislative intent to incentivize only meritorious claims" in the context of a fee-shifting statute implied that the "definition of 'success' should be limited to the successful part, and we must consider the size of the judgment *relative to the size*

*of the plaintiff's demands*." *Id.* (emphasis in original).  The court also reasoned that the parties' settlement offers were relevant to this "logic of incentives," *id.*, because if "a plaintiff demands $100,000.00 while the defendant offers to settle for $50,000.00, only to have the jury award the settlement of $50,000.00, the value of that litigation is the same as if the plaintiff had demanded $50,000.00, only to be offered and awarded $0.00." *Id.*  Conversely, in that court's view, if "a plaintiff demands $100,000.00 and obtains a judgment of $50,000.00 against a defendant who never offered any settlement—which is to say the defendant 'offered' $0.00—both parties will have contributed equally to litigation costs." *Id.* at ___, 28 A.3d at 778.

In sum, the *Friolo IV* Court sought to solve the "degree of success" puzzle by applying a mathematical formula to account for the plaintiff's "*relative* contribution to causing unnecessary litigation, taking into account both her *overstatement* of damages *and appellees' understatement* of damages, as measured by the verdict." *Id.*  As the *Friolo IV* Court saw it, "the relative contribution of each party to 'causing' litigation can be expressed with straightforward arithmetic by multiplying the lodestar amount by a fraction that is the difference between the judgment and the settlement offer, divided by the difference between the claims and the settlement offer." *Id.* Or, expressed in "mathematical notation," the lodestar should be multiplied by the following fraction, *id.* at ___ n.29, 28 A.3d at 778 n.29:

$$\frac{\text{Judgment} - \text{Settlement Offer}}{\text{Claim} - \text{Settlement Offer}}$$

In urging the Court to apply the *Friolo IV* approach here, defendants observe that at trial plaintiffs claimed damages of $351,008.42, exclusive of attorneys' fees.  Opp. at 13.  As noted, the Court found that plaintiffs are entitled to damages of $233,457.02 (inclusive of prejudgment interest that accrued before issuance of the Court's original Memorandum of Decision).   As "a straight percentage of the amount [plaintiffs] claimed," Opp. at 13, defendants argue that

plaintiffs' "success rate" can be expressed as the damages awarded divided by the damages claimed, or approximately 67%. However, defendants also represent that their "highest settlement offer" was $150,000. Opp. at 14. If the *Friolo IV* formula were applied using this number, plaintiffs' degree of success would be only 41.5%.

I do not view the *Friolo IV* analysis as applicable to this case, for several reasons. First, *Friolo IV* arose in the context of a "lodestar" fee calculation under a fee-shifting statute, not in the context of a MRPC 1.5 fee calculation under a contract. To be sure, lodestar cases can, in some circumstances, "provide helpful guidance" in contractual fee-shifting cases. *Congressional Hotel*, *supra*, 200 Md. App. at 505, 28 A.3d at 85. But, the *Friolo IV* Court expressly based its formula for degree of success on the "legislative intent," *Friolo IV*, 201 Md. App. at ___, 28 A.2d at 778, to incentivize meritorious claims in the context of statutory fee-shifting—which is the key distinction between statutory and contractual fee-shifting cases. As the *Friolo IV* Court explained, the "statutes in question are designed to incentivize small claims by providing monetary compensation." *Id.* at ___, 28 A.3d at 769.

It would not be surprising, in a statutory fee-shifting case, for an attorneys' fee award to exceed the plaintiff's monetary recovery; the very purpose of statutory fee-shifting provisions is to advance the public interest served by the statutes in question, by providing incentives to attorneys to take on cases that otherwise would not generate income. In other words, in a statutory fee-shifting case, "if a plaintiff could have recovered only a one-thousand dollar verdict by virtue of one-hundred-thousand dollars worth of legal work, full compensation requires that those fees be shifted, regardless of their magnitude relative to the verdict." *Id.* at ___, 28 A.3d at 773. In that context, where the reasonableness of an attorney's fee defies easy measurement by comparison to the amount in controversy, other measurements must be consulted. It was to that

precise end, applicable only in the statutory fee-shifting context, that the *Friolo IV* Court devised its formula.

Second, even within the statutory fee-shifting context, the *Friolo IV* Court emphasized the limited "scope of [its] holding." *Id.* at ___, 28 A.3d at 781.  The court said: "[W]e do not intend for our formulaic approach in this particular case to stand as a universal and exclusive rule that determines a plaintiff's 'degree of success' to the exclusion of all other considerations." *Id.* Rather, the court explained that it was able to apply a "formulaic approach because a decade of litigation has distilled the issue to an unusually pure form, that being economic damages divorced from any dispute over the other [lodestar] factors and from other considerations on the narrow issue of success, such as failed but unrelated claims or a broad societal benefit." *Id.*

Third, the *Friolo IV* Court developed its formula in the context of litigation in Maryland state court, where there is no general procedural provision for formal offers of judgment.  *Cf.* Md. Rule 2-605 (providing for offers of judgment only as statutorily authorized in medical malpractice cases).  Therefore, the *Friolo IV* Court expressly drew support for its formula from the practice of the federal courts under Rule 68 of the Federal Rules of Civil Procedure.  *See Friolo IV*, 201 Md. App. at ___, 28 A.3d at 777-78 (discussing Fed. R. Civ. P. 68, and stating that a formal offer under the federal rule "sets the measure of success").  Fed. R. Civ. P. 68 permits a defendant to serve a formal offer of judgment on a plaintiff.  Thereafter, if the plaintiff rejects the offer and "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d).[14]  Accordingly, Rule 68 "encourages settlement by providing a formal process by

_____

[14] Costs under Rule 68 can include attorneys' fees in some circumstances.  *See generally Marek v. Chesny*, 473 U.S. 1 (1985).

which a defendant may limit its exposure to trial costs by making a written offer of judgment . . . ." *Lohman v. Duryea Borough*, 574 F.3d 163, 168 (3d Cir. 2009).

This case, however, has proceeded in federal court, where the provisions of Rule 68 are fully applicable. Thus, there is no need to use a formula crafted as an analog to Rule 68; if defendants wanted to limit their exposure to attorneys' fees, they could have utilized Rule 68. But, as plaintiffs point out, defendants did not make an offer of judgment under Rule 68. Indeed, even assuming that the Court could consider defendants' settlement offer,[15] defendants have stated only that their "highest" offer was $150,000. They have not provided the Court with the precise terms of the offer or, crucially, when in the litigation process the offer was made. As Rule 68 makes plain, the timing of an offer is a critical piece of information; a settlement offer made on the eve of trial would have no bearing on attorneys' fees already incurred prior to the offer. At most, it would limit recovery only for the attorneys' fees *going forward*, if the amount of the judgment fell below the amount offered in settlement. Therefore, I view the *Friolo IV* formula as inapplicable for the reason that defendants could have obtained many of the formula's benefits via Rule 68, but chose not to do so. In any event, defendants' purported settlement offer has not been presented to the Court in a form whereby the Court can make any determination as to the offer's effect on plaintiffs' "degree of success."

It is clear that defendants played a substantial role in requiring this case to proceed to

---

[15] Plaintiffs argue that "settlement amounts and negotiations were clearly understood in this case to be 'out of bounds,' and certainly should not have been placed on the record." Reply at 6. They also state that defendants' characterization of the settlement offer is "inaccurate." *Id.* To be sure, statements made in settlement negotiations are ordinarily inadmissible when offered to "prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408. However, such statements are not necessarily inadmissible for other purposes, such as establishing the reasonableness of an attorneys' fee demand. Indeed, Rule 68(b) expressly provides that an unaccepted formal settlement offer made under the rule is admissible "in a proceeding to determine costs." In any event, because defendants' purported settlement offer does not result in a reduction of the award of attorneys' fees for the other reasons explained in the text, I need not resolve plaintiffs' argument that defendants' settlement offer is not properly before the Court.

trial.  It is also clear that both parties contractually agreed that the prevailing party in any litigation regarding the Lease would be entitled to an award of attorneys' fees.  Assuming the accuracy of defendants' settlement offer of $150,000, that sum was well below the unpaid rent and late fees, totaling $202,560.86, which defendants indisputably owed to plaintiffs under the terms of the Lease.  Thus, rather than demonstrating plaintiffs' relative lack of success, the settlement offer makes clear that vigorous litigation was necessary to bring this case to its conclusion.

In sum, I reject application of the *Friolo IV* formula to this case.[16]  Rather, I agree with plaintiffs that consideration of the "amounts involved and the results obtained," MRPC 1.5(a)(4), must account for the fact that, despite defendants' clear liability, they "did not choose to pay what amounts [they] contended were due; rather, [they] paid *nothing*."  Reply at 2.

Attorneys' fees of $91,922.76 represent approximately 39% of the other damages awarded by the Court of $233,457.02.  They represent only about 28% of the total damages award, inclusive of attorneys' fees.  To be sure, neither side's position regarding damages was an unqualified success.  But, in my view, an attorneys' fee award of $91,922.76 is not disproportionate to the "amounts involved and the results obtained" by plaintiffs.  MRPC 1.5(a)(4).  It is reasonable under the circumstances of this case.  Therefore, I will award to

_____

[16] As I have explained, I find *Friolo IV* inapplicable to this case, even assuming that *Friolo IV* represents a legally sound approach in cases to which it would apply by its own terms. To be sure, *Friolo IV* presently represents the law of Maryland, given that a reported opinion of the Maryland Court of Special Appeals "remains the law unless and until it is overruled," *Deems v. Western Maryland Ry. Co.*, 247 Md. 95, 102, 231 A.2d 514, 518 (1967), and "is in effect and controlling as of the date of the filing of the opinion." *Lemley v. Lemley*, 109 Md. App. 620, 630, 675 A.2d 596, 600, *cert. denied*, 343 Md. 679, 684 A.2d 454 (1996). Nevertheless, the Maryland Court of Appeals has just granted certiorari, which will likely result in "*Friolo V.*" And, despite my respect for the Maryland Court of Special Appeals, I am troubled by the implication of *Friolo IV* that defendants' settlement offers (without regard to their timing or relative amount) and *ad damnum* clauses in plaintiffs' complaints (in which counsel ordinarily demand all damages to which a plaintiff might reasonably be entitled) can form the basis of a mathematically precise method of calculating the "degree of success" in a particular case.

plaintiffs, as prevailing parties, attorneys' fees in the amount of $91,922.76, along with their reasonable expenses of $406.63.

A separate Order implementing this ruling, as well as the rulings in my Amended Memorandum of Decision, follows.


Date:   December 20, 2011                              _____/s/_____
                                                      Ellen Lipton Hollander
                                                      United States District Judge